In the District Court of the United States
For the District of South Carolina

### BEAUFORT DIVISION

| | | |
|---|---|---|
| **Rodney Epps, #287394,** | ) | |
| | ) | Civil Action No. 9:07-3113-RBH-GCK |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| **Warden Richard Bazzle,** | ) | **OF THE MAGISTRATE JUDGE** |
| | ) | |
| Respondent. | ) | |
| | ) | |

## I.    INTRODUCTION

The Petitioner, Rodney Epps ("Petitioner" or "Epps"), a state prisoner proceeding

without the assistance of counsel, seeks *habeas corpus* relief under Title 28, United States

Code, Section 2254.  By definition, the relief which he seeks must be based upon a finding

that he is being illegally detained in violation of the Constitution or laws or treaties of the

United States.  28 U.S.C. § 2241(c)(3).  Pursuant to the provisions of Title 28, United States

Code Section 636(b)(1)(A) and (B), and Local Civil Rules 73.02(B)(2)(c) and (e), D.S.C., this

court has jurisdiction over the matter.  Warden Richard Bazzle, the respondent

("Respondent") in this action, has filed a motion for summary judgment in this case [12], and

therefore this Report is prepared for the District Court's review.

## II.    *PRO SE* PETITION

Petitioner is a *pro se* litigant, and thus his pleadings are accorded liberal construction.

*Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976);

*Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978);

*Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970

(1978).  Under established local procedure in this judicial district, a careful review has been

made of the *pro se* Petition herein pursuant to the procedural provisions of 28 U.S.C. § 1915,

28 U.S.C. § 1915A, and the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L.

No. 104-132, Title I, § 104, 110 Stat. 1214.  This review has been conducted in light of the following precedents:  *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys, and a federal district court is charged with liberally construing a complaint or petition filed by a pro se litigant to allow the development of a potentially meritorious case.  *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *and Cruz v. Beto*, 405 U.S. 319 (1972).  When a federal court is evaluating a *pro se* complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true.  *Fine v. City of New York*, 529 F.2d 70, 74 (2d Cir.1975).  Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal.  The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented.  *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999).  Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court.  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court.  *Rice v. National Security Council*, 244 F.Supp. 2d 594, 596 (D.S.C. 2001), *citing Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990).  Such is the case with the present Petition.

### III.    PROCEDURAL HISTORY IN STATE COURT

### A.  Proceedings in the Court of General Sessions

The Anderson County Grand Jury indicted Petitioner at the September 2002 term of court for kidnapping (2002-GS-04-2361), attempted armed robbery (2002-GS-04-2362), and two counts of possession of a firearm during the commission of a violent crime (2002-GS-04-2360, & -2363).  Petitioner was represented by Robert A. Gamble, Esquire on this charge.  On September 19, 2002, Petitioner's case was called before the Honorable Alexander S. Macaulay and he pled guilty to these offenses pursuant to a sentence which counsel negotiated with the prosecution.  (Tab #1, pp. 1-23; Tab #6)  Judge Macaulay sentenced him to thirty years for kidnapping, twenty years for attempted armed robbery, and two terms of five years on the firearm convictions.  Judge Macaulay also ordered that the sentences run concurrently.  (Tab #1, pp. App. pp. 3-22).  Petitioner did not appeal his guilty plea or sentence.

### B.  Petitioner's Application for Post-Conviction Relief

On December 27, 2002, the Petitioner filed a *pro se* application for post-conviction relief ("PCR") (2002-CP-04-4096), in which he alleged the following grounds for relief:

> 1.    Ineffective assistance of counsel.  Applicant contends he was denied effective assistance of counsel during his guilty plea because the trial court lacked subject matter jurisdiction to accept Applicant's guilty plea.
>
> 2.    Attorney never informed me of my right to appeal.
>
> 3.    Judge lacked subject matter jurisdiction to accept Applicant's plea [because there was no written waiver of presentment to the Grand Jury].

(Tab #1, pp. 24-31)

The State filed its Return on September 17, 2004.  (Tab #1, pp. 32-38)  The Honorable Lee S. Alford held an evidentiary hearing into the matter on August 30, 2005 at the Anderson County Courthouse.  Petitioner was present at the hearing and represented by Rodney Richey,

Esquire.  Assistant Attorney General Daniel E. Grigg represented the State.  Petitioner testified on his own behalf.  (Tab #1, pp. 39-67)

On September 30, 2005, Judge Alford filed an Order of Dismissal in which he dismissed the Application with prejudice.  Judge Alford addressed Petitioner's claim that the trial court lacked subject matter jurisdiction and that he did not waive presentment of the charges to the Grand Jury, as well as his allegations that trial counsel was ineffective because he (1) failed to properly investigate the case; (2) failed to inform Petitioner proceedings on a motion to  suppress his statement; (3) coerced Petitioner into entering the plea; and (4) failed to advise Petitioner of his right to appeal.  Judge Alford granted relief on one of the indictments charging Petitioner with possession of a firearm during the commission of a violent crime (2002-GS-04-2363) because there was no evidence of a written waiver of grand jury presentment.  (App. pp. 68-73)

A timely notice of appeal was served and filed.  Assistant Appellate Defender Wanda H. Carter represented Petitioner in appellate proceedings.  On June 19, 2006, Ms. Carter filed a *Johnson* Petition for Writ of Certiorari on Petitioner's behalf and petitioned to be relieved as counsel.  The *Johnson* Petition set forth one issue:

Petitioner's pleas were involuntary because he was coerced into pleading guilty.

The Petitioner filed a *pro se* Petition for Writ of Certiorari dated July 14, 2006, in which he raised the following issues:

1.    Did the trial court have subject matter jurisdiction to convict petitioner?

2.    Did the trial court have a valid waiver by statute from legislature.

On April 4, 2007, the South Carolina Court of Appeals entered an Order in which it denied the Petition for Writ of Certiorari and granted the Petition to be Relieved as Counsel. The Remittitur was sent down on April 20, 2007.

## IV.  FEDERAL COURT HISTORY

The Petitioner is presently incarcerated in the Perry Correctional Institution of the South Carolina Department of Corrections ("SCDC").  Petitioner filed this Petition for a writ of habeas corpus (the "Petition") on September 11, 2007, against the above-captioned Respondent.[1]  [1]  In his *pro se* Petition, Petitioner has raised the following grounds for relief:

| | |
|---|---|
| Ground One: | Lack of Subject-Matter Jurisdiction |
| Supporting Facts: | It is a fundamental practice of law that a trial court acquire subject matter jurisdiction by way of an indictment from a Grand Jury, a valid wavier of presentment or a less-included offense.  These indictments were not from a Grand Jury, nor a less-included offense.  Moreover, this issue was before the trial court, but one cannot waive presentment during a plea or after the plea.  This is a condition that should take place precedent to court.  Therefore, obtaining an oral waiver during the plea, cannot bestow subject-matter jurisdiction |
| Ground Two: | Invalid Waiver of Presentment |
| Supporting Facts: | The petitioner signed these sentencing sheets during the plea hearing, or after the plea hearing.  Therefore, it cannot be said that this conduct is valid for a waiver of presentment.  When this procedure is to be done before the trial court obtain jurisdiction. |
| Ground Three: | Ineffective assistance of counsel |
| Supporting Facts: | Counsel was ineffective for not filing for an appeal, nor did he investigate the matter, so that he could prepare for a trial. |

(Habeas Petition [1]).

On September 21, 2007, the undersigned issued an Order which informed all parties that Petitioner had the benefit of the holding of *Houston v. Lack* with respect to the filing date of the Petition.  The Order also authorized service upon the Respondent, apprised the Respondent of the deadline for filing dispositive motions, and notified Petitioner of the

---

[1]    In *habeas corpus* cases, the Petitioner has the benefit of the holding in <u>Houston v. Lack</u>, 487 U.S. 266 (1988) with respect to the "delivery" date of his Petition.  In this case, the court has examined the envelope attached to Petitioner's Petition and has determined that the Petition was delivered to the correction institution mailroom on September 11, 2007.

change of address rule.  [7]  Thereafter the Respondent filed his Motion for Summary

Judgment, and their Return and Memorandum to the Petition on November 14, 2007.  [11-12]

The undersigned issued an Order filed on November 15, 2007, pursuant to *Roseboro v.*

*Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying the Petitioner of the summary judgment

dismissal procedure and the possible consequences if he failed to respond adequately to the

Respondent's Return.  [13]  On December 19, 2007, Petitioner filed his Response to the

Respondent's motion for summary judgment.  [15]

## V.  DISCUSSION

### A.  The Antiterrorism and Effective Death Penalty Act

Petitioner filed his petition on September 11, 2007.  Because Petitioner filed his

Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), this Court's review of his collateral attack on his criminal conviction is

governed by the parameters set forth in the AEDPA, which amended Section 2254.  *Lindh v.*

*Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Breard v. Pruett*, 134 F.3d

615 (4th Cir.), *cert. denied*, 521 U.S. 371 (1998); *Green v. French*, 143 F.3d 865 (4th Cir.

1998), *cert. denied*, 525 U.S. 1090 (1999).

### B.  The AEDPA's Statute of Limitations

The AEDPA provides that "[a] 1-year period of limitation shall apply to an application

for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."

28 U.S.C. § 2244(d)(1).  The one year period begins to run at the "conclusion of direct review

or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  A

"properly filed application for State post-conviction relief" tolls the time for filing.  28 U.S.C.

§ 2244(d)(2).  While state collateral review tolls the one-year statute of limitations under §

2244(d)(1)(A) for properly filed pleadings, *Artuz v. Bennett*, 531 U.S. 4 (2000), it does not

establish a right to file within one year after completion of collateral review.  *Harris v.*

*Hutchinson*, 209 F.3d 325 (4th Cir. 2000) (an inmate does not have one year from the

conclusion of state court collateral review; instead, the one year period for filing habeas petition commences upon conclusion of direct review of conviction but is suspended while state PCR proceedings are pending in any state court); *Smith v. McGinnis*, 208 F.3d 13 (2d Cir. 2000). Nor does the tolling period for state collateral review include the time for filing a petition for certiorari in the United States Supreme Court. *Crawley v. Catoe*, 257 F.3d 395, 399 (4th Cir. 2001) ("neither the time for filing a petition for certiorari in the United States Supreme Court, nor the time a petition for certiorari is considered by the United States Supreme Court, is tolled under 28 U.S.C. § 2244(d)(2) from the one-year statute of limitations under § 2244(d)(1)"); *see also Carey v. Saffold*, 536 U.S. 214, 220 (2002) (application for state collateral review remains pending during the time to seek further review in the state courts, "until the application has achieved final resolution through the State's post-conviction procedures"[.]). "[T]he one-year limitation period is also subject to equitable tolling in 'those rare instances where–due to circumstances external to the party's own conduct–it would be unconscionable to enforce the limitation against the party.' " *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002), *quoting Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000).

This court has reviewed the pleadings and various documents filed by the Petitioner and has determined that the Petition is timely under the AEDPA.

### C. Exhaustion of State Court Remedies

Relief under Section 2254 may be had only after a *habeas* petitioner has exhausted his state court remedies: "It is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in *habeas*. Claims not so raised are considered defaulted." *Breard v. Green*, 523 U.S. 371, 375 (1998), *citing Wainwright v. Sykes*, 433 U.S. 72 (1977); *see also* 28 U.S.C. § 2254(b).

The theory of exhaustion is based on 28 U.S.C. § 2254, which gives the federal court jurisdiction of habeas petitions. *See generally, O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). The court's exhaustion requirements under Section 2254

are explained in *Matthews v. Evatt*, 105 F.3d 907, 910-911 (4ᵗʰ Cir.), *cert. denied*, 522 U.S. 833 (1997):

> In the interest of giving state courts the first opportunity to consider alleged constitutional errors occurring in a defendant's state trial and sentencing, a § 2254 petitioner is required to "exhaust" all state court remedies before a federal district court can entertain his claims. Thus, a federal habeas court may consider only those issues which have been "fairly presented" to the state courts[.]

> To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court. The burden of proving that a claim has been exhausted lies with the petitioner.

> The exhaustion requirement, though not jurisdictional, is strictly enforced[.] (Citations omitted)

Thus, if claims were never reviewed by the highest court in South Carolina, those claims will be barred and cannot be considered by the Court. A claim is unexhausted unless the substance of a petitioner's claims are "fairly presented" to the state courts, *Matthews v. Evatt*, 105 F.3d at 911, or no state remedy remains available. *Id.* To fairly present a claim, a petitioner must "include reference to a specific federal constitutional guarantee, as well as a statement of facts that entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (*citing Picard v. Connor*, 404 U.S. 270, 271 (1971)).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first method involves a direct appeal and, pursuant to state law, a petitioner is required to state all his grounds in that appeal. *See* SCAR 207 *and Blakeley v. Rabon*, 266 S.C. 68, 221 S.E.2d 767 (1976). The second method involves the filing of an application for relief under the South Carolina Post Conviction Procedure Act, S.C. Code Ann. §§ 17-27-10–160. The applicant may allege constitutional violations in a post-conviction relief ("PCR") proceeding, but only if the issue could not have been raised by direct appeal. *Gibson v. State*, 329 S.C. 37, 41, 495 S.E.2d 426, 428 (1998), *citing* S.C. Code Ann. §§ 17-27-20(a)(1), (b). A PCR applicant is also required to state all of his grounds for relief in his application. *See* S.C. Code Ann. § 17-27-90.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim, <u>unless</u> the petitioner has procedurally bypassed (that is, procedurally defaulted) his state remedies, at which point he would be procedurally barred from raising them in federal court. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *See, e.g., Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977) *and Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983). If a petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. *See Rose v. Lundy*, 455 U.S. 509, 515, 102 S.Ct. 1198, 71 L.Ed.2d.379 (1982). With these basic tenets in mind, the court will turn to the present Petition.

Here, Petitioner asserted the allegations raised in Grounds One and Two in the state PCR court and, more importantly, he raised them in the state supreme court on certiorari. Thus, these allegations are exhausted for purposes of this Court's review, even though neither allegation states a claim upon which federal habeas corpus relief may be granted.

With respect to the allegation in Ground Three that trial counsel was ineffective for not filing for an appeal, the Respondent contends this allegation was not exhausted because it not presented to the state supreme court on certiorari, referring this court to the South Carolina Supreme Court's opinion in *State v. McKennedy*, 348 S.C. 270, 559 S.E.2d 850 (2002).[2] The undersigned notes that the issue was not presented in Petitioner's *pro se* brief filed after the *Anders* brief. Where a habeas petitioner has failed to exhaust his state remedies and the state court would now find his or her claims procedurally barred, further exhaustion is

---

[2]        Respondent's Br. at p. 6.

not required. *See Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); and *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). However, the federal court is precluded from hearing a procedurally defaulted claim unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Matthews v. Evatt*, 105 F.3d at 916 (*quoting Coleman v. Thompson*, 501 U.S. at 750). This standard has been referred to as a "demanding burden." *Townes v. Murray*, 68 F.3d 840, 847 (4th Cir. 1995). Petitioner has not made any demonstration, and thus the court will not consider Petitioner's claim.

In contrast, however, Petitioner's contention in Ground Three that his plea was coerced by counsel's ineffectiveness with respect to investigation was, in fact, presented and thus was exhausted. Thus, Petitioner did not exhaust each allegation in the habeas Petition in state court. Yet, Petitioner does not have any state court remedies available to him because any future PCR application would be barred as successive under S.C. Code Ann. § 17-27-90 (1985); *Aice v. State*, 409 S.E.2d 392 (S.C. 1991), and any future PCR application would be untimely under the one-year statute of limitations which governs the filing of PCR actions. S.C. Code Ann. § 17-27-45(A) (Supp. 2006). Therefore, the exhaustion requirement is technically satisfied.

Petitioner's technical compliance with the exhaustion requirement, however, does not entitle him to relief. Under the AEDPA, the state court's adjudication of a petitioner's claims on their merits is accorded deferential review. *Cummings v. Polk*, 475 F.3d 230, 237 (4th Cir. 2007). Pursuant to the standards promulgated in 28 U.S.C. § 2254, a federal court may not grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court proceedings unless the state court's adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court adjudication is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). If the United States Supreme Court has never addressed the claim presented to the state court, then, the state court decision cannot be said to have "unreasonabl[y] appli[ed] clearly established Federal law" [under § 2254(d)(1).] *Carey v. Musladin*, 127 S.Ct. 649, 653-54 (2007) (Ninth Circuit Court of Appeals erred by holding the state court of appeal's decision was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court, where the state court decision was contrary to Ninth Circuit precedent but the Supreme Court had never decided the issue). A state court decision unreasonably applies clearly established federal law if, despite correctly identifying the governing legal principle, it "unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. An objectively "unreasonable application of federal law is different from an incorrect or erroneous application of federal law." *Id*.

Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be "unreasonable" for habeas relief to be granted. This is "a substantially higher threshold." *Williams*, 529 U.S. at 410; *Schriro v. Landrigan*, 127 S.Ct. 1933, 1939-40 (2007). When a petitioner challenges findings of fact made by a state court, a federal court cannot issue a writ unless the state's adjudication on the merits "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). *See also Campbell v. Polk*, 447 F.3d 270, 274-75 (4th Cir. 2006)

(A determination of the factual issues made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.") 28 U.S.C. § 2254(e)(1); *see also Schriro*.

## B.  Discussion of Petitioner's Grounds for Habeas Corpus Relief

## GROUNDS ONE AND TWO

Petitioner alleges that the trial court lacked subject matter jurisdiction because he was not indicted by the Anderson County Grand Jury and he did not validly waive presentment of his indictments to the Grand Jury.  These allegations fail to state a claim upon which federal habeas corpus relief may be granted.  .  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' ...  Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  (Citations omitted).  *See also Marshall v. Lonberger*, 459 U.S. 422, 438, n. 6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules").

A state court's determination that one of its courts had jurisdiction over a purely state law criminal charge is not a matter cognizable in federal habeas corpus.  *See Wright v. Angelone*, 151F.3d 151 (4th Cir. 1998); *Ashford v. Evans*, 780 F.2d 405, 407 (4th Cir.1985) ("[D]eficiencies in state court indictments are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process.").  Petitioner's allegation fails to state a claim upon which habeas corpus relief can be granted under *Pulley v. Harris*, 465 U.S. 37(1984) and *Wright. Id.*

Moreover, the allegations also fail as a matter of state law.  Petitioner asserts that the trial court lacked subject matter jurisdiction over the crimes to which he pled guilty because

he was not indicted by the Anderson County Grand Jury and he did not validly waive presentment of his indictments to the Grand Jury.  However, this does not state a claim involving the trial court's subject matter jurisdiction.  "Subject matter jurisdiction is the power of a court to hear and determine cases of the general class to which the proceedings in question belong, . . . and . . . issues related to subject matter jurisdiction may be raised at any time. . . . The lack of subject matter jurisdiction may not be waived, even by consent of the parties."  *State v. Gentry*, 363 S.C. 93, 100, 610 S.E.2d 494, 498 (2005) (Citations omitted).  "[S]ubject matter jurisdiction of the circuit court and the sufficiency of the indictment are two distinct concepts and the blending of these concepts serves only to confuse the issue.  Circuit courts obviously have subject matter jurisdiction to try criminal matters."  *Id* at 101, 610 at 499.

Although an indictment does not confer subject matter jurisdiction, the state supreme court has held that due process requires that a criminal defendant be properly served with a valid indictment.  *State v. Smalls*, 613 S.E.2d 754, 756 (S.C. 2005); *Gentry*, 610 S.E.2d at 499 n. 6.  The indictment is a notice document that is required by the state constitution and by statutes. *Id*.  "The primary purposes of an indictment are to put the defendant on notice of what he is called upon to answer, *i .e.*, to apprise him of the elements of the offense and to allow him to decide whether to pled guilty or stand trial."  *State v. Evans*, 611 S.E.2d 512, 517 (2005).  "Accordingly, challenges to the sufficiency of an indictment must be raised before a jury is sworn."  *Smalls, supra,* citing *Gentry, supra*.  *See also Evans, supra*.

In the present case, at the guilty plea, trial counsel indicated that he had explained to Petitioner the charges in the indictments; the possible punishments; and Petitioner's right to a jury trial.  As the PCR judge observed, the trial court addressed the absence of Grand Jury indictments with both trial counsel and Petitioner.  After trial counsel was given an opportunity to discuss the Grand Jury indictment process with Petitioner off of the record, counsel represented to the trial court that he had explained the Grand Jury process to

Petitioner.  In his opinion, Petitioner understood "the charges, the punishments and his rights."  Also, counsel agreed with his decision of plead guilty to the indictments.  Counsel stated he was not aware "of any physical, mental or emotional condition that might affect the [Petitioner's] understanding [of] what he's doing today."  Further, counsel's investigation of the facts and circumstances of the case led him to conclude that the State could present sufficient evidence to establish Petitioner's guilt on each of the charges against him and that Petitioner "most probably would be found guilty" if he received a jury trial.  (App. pp. 4-5)

Moments later, the trial judge addressed Petitioner, who had previously been sworn (App. pp.3-4) and he asked Petitioner a series of questions relating generally to the voluntariness of the plea.  Petitioner swore that he was thirty-three years old; he had graduated from high school; he had worked stocking groceries and, although he was not married, he five dependent children.  He paid child support for two of the children and he did the best that he could for the other children.  His only prior conviction was for driving under suspension, and he had never been treated for mental illness or alcohol or drug abuse.  He denied that he was under the influence of any alcohol, drugs or medication at the time of his plea; and he was not aware of any physical, mental or emotional condition that might affect his understanding of what he was doing at the time of the plea.  (App. pp. 6-7)  Petitioner confirmed that trial counsel had explained the charges against him, the possible punishments and his constitutional rights; and he had understood these matters.  He then stated that he understood the nature of the charges against him; the range of possible punishments; the maximum punishment that the trial court could impose; and the constitutional rights he was waiving by entry of his guilty plea.  (App. pp. 7-9)  He likewise swore that he understood the rights he was waiving included his right to a jury trial; the presumption of innocence; his right to present a defense to the underlying charges; and his right to challenge or contest whether any statement was given in accordance with his constitutional rights.  He also understood that he was admitting the truth of the charges in all of the indictments by pleading guilty.

Petitioner then admitted that he was guilty to the charges and he gave allocution. He admitted that he knew what he was doing was wrong when he did it and that he believed he would most probably be found guilty if he received a jury trial. (App. pp. 8-14)

In the course of this colloquy, Petitioner specifically swore that he understood the trial court's explanation of his right to have each of his charges presented to the Grand Jury, as well as the grand jury process. However, he wished to give up his "right to have the Grand Jury examine [his] case." (App. p. 9). *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (Although the defendant's representations at the time of his guilty plea are not "invariably insurmountable" when challenging the voluntariness of his plea, the Court stated that, nonetheless, the defendant's representations, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier . . . . Solemn declarations in open court carry a strong presumption of verity." The Court also concluded that a subsequent presentation of conclusory allegations and contentions that are wholly incredible in the face of the record are subject to summary dismissal); *Crawford v. United States*, 519 F.2d 317 (4th Cir. 1975); *Edmonds v. Lewis*,546 F.2d 566 (4th Cir. 1976).

In *State v. Smalls*, 364 S.C. 343, 613 S.E.2d 754 (2005), the Supreme Court ruled that a written waiver on the indictment was not required. Rather, a sentencing sheet with "waiver of presentment" to the grand jury block checked and signed by the defendant is sufficient. (App. pp. 71-72). Petitioner's collateral appellate counsel only briefed the question of whether Petitioner's guilty plea had been coerced and she did not include the sentencing sheets from the Anderson County Clerk of Court's file in the Appendix to the *Johnson* Petition for Writ of Certiorari. However, Respondent provided the sentencing sheets and the Anderson County Clerk of Court's file for the criminal case to the court (attached to the Return). Here, the PCR judge correctly ruled that the sentencing sheets in this case reflect that Petitioner checked the "waiver of presentment" block on each sentencing sheet, except for one of the indictments charging Petitioner with possession of a firearm during the

commission of a violent crime (2002-GS-04-2363). The PCR judge granted relief on this indictment because there was no evidence of written waiver of grand jury presentment. (App. pp. 68-73). Thus, Petitioner has obtained the only relief available to him under state law. Because there is no federal constitutional claim before this Court and Petitioner has obtained the only possible state court relief available to him, it is recommended that these allegations should be dismissed.

## GROUND THREE

In Ground three, Petitioner raises two allegations of ineffective assistance of counsel. First, he alleges that trial counsel was ineffective for not filing for an appeal. Second, he contends that trial counsel did not properly investigate the matter, so that he could prepare for a trial. As discussed above, Petitioner's first allegation is procedurally defaulted because Petitioner failed to present it to the state supreme court.

To establish that he received ineffective assistance of counsel, an inmate must make a twofold showing. He must first demonstrate that his attorneys' "representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Wiggins v. Smith*, 539U.S.510 (2003). *See also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) ("[E]ven if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight"). The inmate must also demonstrate that he was prejudiced by his attorneys' ineffectiveness. In *Reid v. True*, 349 F.3d 788, 798 (4th Cir. 2003), the court explained:

> In the context of a guilty plea, a demonstration of prejudice requires [a petitioner] to establish 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' *Hill v. Lockhart*, 474 U.S.52, 59 (1985). "In *Hill*, the Supreme Court explained that this prejudice inquiry is quite similar to the inquiry for prejudice under *Strickland*, in that the question of whether counsel's ineffectiveness prejudiced a petitioner's guilty plea will often turn on an assessment of the likelihood of success of a particular investigation or strategy. *See id.* at 59.

In *Roe v. Flores-Ortega*, 458 U.S. 470 (2000, the United States Supreme Court clarified the application of the *Strickland* standard to a claim that an attorney was constitutionally deficient for failing to file a notice of appeal in any context.  In the absence of a direct instruction from a defendant to appeal, the question of whether counsel's failure to appeal is constitutionally deficient depends upon whether counsel in fact consulted with the defendant about an appeal.  *Id* at 478.

If counsel has consulted with the defendant, the failure to file an appeal is deficient only if it contradicts the defendant's instructions to appeal.  *Id.*  However, if counsel has failed to consult, the reviewing court must consider whether this failure constitutes deficient performance.  The Court expressly declined to impose any bright-line test in *Flores-Ortega*, noting that the circumstances maybe such that even a failure to consult would not render counsel's performance deficient.  *See Id* at 479 ("We cannot say, as a constitutional matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient.  Such a holding would be inconsistent with both our decision in *Strickland* and common sense").  "In doing so, a court should consider whether (1) . . . a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal); [and] (2) . . . [whether] this particular defendant reasonably demonstrated to counsel that he was interested in appealing."  *Id*. at 480.  However, the Fourth Circuit Court of Appeals has indicated that the inquiry begins with a rebuttable presumption that the lack of consultation demonstrates deficiency.  *See Frazer v. South Carolina*, 430 F.3d 696, 707 (4th Cir. 2005) ("Where, as here, the defendant has not specifically requested an appeal, counsel is under a professional obligation to 'consult' with defendant regarding [the appeal], unless circumstances demonstrate that consultation is unnecessary") (citing *Flores-Ortega*, 458 U.S. at 478-79).

Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of

potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. *Id*. at 479; *see also id.* at 488 (Breyer, J. concurring in part and dissenting in part). Even where the defendant pleads guilty, "the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal." *Id*.

If the court determines that counsel's performance was deficient, the court must then determine whether the defendant was prejudiced thereby. "[E]vidence that there were non-frivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in" demonstrating prejudice. *Id*. at 485. However, in the prejudice context, the Petitioner must make the "additional showing that, had he received reasonable advice from counsel about an appeal, he would have instructed his counsel to file an appeal." *Frazer*, 430 F.3d at 708 (internal citation omitted).

In the present case, Petitioner did not present any evidence at the PCR hearing in support of this allegation. He did not testify concerning counsel's supposed failure to perfect an appeal (App. pp. 42-55), and he did not present any evidence through trial counsel. (App. pp. 56-66). Therefore, he has merely alleged, in conclusory terms, that counsel's performance was inadequate, without offering any proof of this allegation. It is recommended that this allegation be dismissed. *E.g., Nickerson v. Lee*, 971F.2d 1125, 1136 (4th Cir. 1992) (conclusory statement that discrimination occurred in selecting the jury was not enough), abrogated on other grounds, *Trest v. Cain*, 522 U.S. 87 (1997) (Court of Appeals is not required to raise issue of procedural default sua sponte); *Ellis v. Lynaugh*, 873 F.2d 830, 838-39 (5th Cir. 1989) (habeas petitioner's "mere conclusory allegations of discriminations" in grand jury selection were "insufficient to entitle an individual to relief"). *See also Tejada*

*v. Dugger*, 941 F.2d 1551, 1559(11th Cir. 1991) ("a petitioner is not entitled to an evidentiary hearing, however, when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible") (internal quotations omitted) (emphasis in original). *See also Ruark v. Gunter*, 958F. 2d 318, 319 (10th Cir. 1992) ("naked allegations" are not cognizable under federal habeas corpus statutes); *Hall v. Bellmon*, 935 F. 2d 1106, 1110 (10th Cir. 1991) ("conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be granted").

Further, Petitioner cannot show prejudice from counsel's failure to advise Petitioner of his right to appeal, *see Strickland*, 466 U.S. at 687 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed"). First, the record of the guilty plea reflects that the trial court advised him of the right to appeal the convictions and sentence, and that he only had ten days within which to do so. Further, he swore that he understood this right. (App. 14). Moreover, there was no evidence in the record "that there were non-frivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in" demonstrating prejudice. *Strickland*, 466 U.S. at 485. As discussed, in the prejudice context, the Petitioner must make the "additional showing that, had he received reasonable advice from counsel about an appeal, he would have instructed his counsel to file an appeal." *Frazer*, 430 F.3d at 708 (internal quotation omitted).

In South Carolina, most non-frivolous issues are waived by a guilty plea as a matter of state court procedure. In South Carolina "[t]o be valid, a guilty plea must be unconditional." *State v. Easler*, 584 S.E.2d 117,119 (S.C. 2003); *State v. O'Leary*, 393 S.E.2d 186, 187 (1990) ("guilty pleas are unconditional and, if an accused attempts to attach any condition, the

trial Court must direct a plea of not guilty . . . it is, thus ,impermissible for a defendant to preserve constitutional issues while entertaining a guilty plea; the trial Court may not accept the plea on such terms"). A freely and voluntarily entered plea of guilty acts as a waiver of all non-jurisdictional defects and defenses. *United States v. Willis*, 992 F.2d 489, 490 (4th Cir. 1993). Finally, the South Carolina Supreme Court will not consider any issue on direct appeal which is not presented in the trial court. *State v. Johnston*, 510S.E.2d 423, 424-25 (S.C. 1999) (holding that challenge to excessive sentence does not involve subject matter jurisdiction and must be raised in the trial court in order to be preserved for appeal). *See also State v. Walker*, 166 S.E.2d 209 (S.C. 1969).

These limitations on appellate review of a plea virtually foreclose the ability of a defendant to raise issues on direct appeal from a guilty plea in this State. The only claim that may be raised on appeal from a guilty plea in South Carolina (where there is no contemporaneous objection to preserve an argument) is whether the trial court lacked subject matter jurisdiction. *See Weinhauer v. State,* 513 S.E.2d 840, 841 (S.C. 1999) (subject matter jurisdiction may be raised at any time, including for the first time on appeal). Here, Petitioner did not advance any non-frivolous grounds that could have been raised on appeal from his guilty plea at the PCR hearing. Additionally, he did not testify that if he had "'received reasonable advice from counsel about an appeal, he would have instructed his counsel to file an appeal." *Frazer*, 430 F.3d at 708. Therefore, he cannot meet his burden of establishing Sixth Amendment prejudice and it is recommended that Respondent be granted summary judgment on this allegation.

With respect to Petitioner's allegation that trial counsel did not properly investigate the matter, so that he could prepare for a trial, the PCR judge's denial of relief on this allegation was not "contrary to" and did not involve "an unreasonable application of" *Strickland*, *Hill* or any other clearly established United States Supreme Court precedent. *See* Section 2254(d)(1); *Williams, supra*. As discussed above, the Petitioner gave sworn

responses at the time of his plea that he was guilty to the charges and he gave allocution.  He

specifically admitted that he knew what he was doing was wrong when he did it and that he

belied he would most probably be found guilty if he received a jury trial.  Also, he stated that

he understood the negotiated sentence, and he stated that he wanted the trial court to the

negotiated sentence.  He denied that anyone had threatened him or used force to cause him to

enter the plea, and he stated that he was pleading guilty of his "own free will and accord."

Additionally, he stated that he had received enough time to decide whether or not to plead

guilty; he had "fully discussed all aspects of this case with [trial] counsel;" he did not need

any additional time to speak with counsel; he was completely satisfied with counsel's

services; he had fully understood the trial court's questions; and he did not need to ask the

trial court anything.  (App. pp. 10-14).

        Petitioner testified at the PCR hearing that he felt that counsel's failure to adequately

investigate had coerced him into entering his guilty plea because counsel never advised him

that a statement he had given to law enforcement could be suppressed and counsel did not

investigate witnesses on Petitioner's behalf "to see if their statements were credible."  (App.

pp. 49-50).  According to Petitioner, counsel only met with him one time, on September 17,

and allegedly told him that he would get fifty years if he went to court.  However, counsel had

spoken to the prosecutor and she had agreed to a thirty year sentence.  Counsel advised him to

take the thirty year deal.  (App. p. 46).

        Petitioner admitted that he had given a statement; but counsel never discussed with

him whether the statement could be used against him and he supposedly was unaware that he

had the right to a suppression hearing.  He claimed  that counsel informed him the

prosecution's only evidence against him was the gun seized from him and a photograph of

him at the ATM.  Petitioner had seen this photograph and said the victim was not in it.  (App.

pp. 46-47).  More importantly, when asked if he had wanted to have a jury trial at any point,

Petitioner testified that "I was just trying to get the best deal.  But Mr. Gamble told me that it

would be [in my best interest] to go ahead and take the thirty years.  He even called my mother and told her that I would come out better taking the thirty years than going to court and get[ting] fifty years."  In response to a query about whether he felt like he "could have won at trial," Petitioner stated that "I think I had a better chance" than  pleading because the State "didn't have any evidence on me other than the picture which didn't indicate anything. Just me at the ATM machine."  Counsel did not want to go to trial and told him that the State had enough evidence to convict him.  However, counsel did not tell him what evidence the State had.  Therefore, he asked the PCR judge for a new trial.  (App. pp. 47-49).

On cross-examination, Petitioner admitted that he had been sworn at the time of his plea and he had said "yes" when the trial court asked whether he had entered the plea voluntarily and willingly.  However, he allegedly gave this response because counsel had advised him to do so, and he alleged that he could not remember whether the trial court had asked him if he had been coerced into entering the plea.  He likewise could not remember all of the rights that the trial court instructed him that he waived by entering the plea but he did remember that the trial court instructed him on his right to remain silent.  (App. pp. 50-52). He further admitted on cross-examination that he remembered that the trial court advised him at the plea of the elements of the crimes charged and the possible sentences.  Also, he had understood the trial court's explanations.  Likewise, he admitted that he had understood that the prosecutor was making recommendations.  Petitioner stated that "I took the plea to not get the fifty years. . . . He explained that all my charges totaled up to 207 years.  But I took the thirty years in order to not get the fifty years."  He remembered the trial court's question as to whether he felt the State could present sufficient evidence to prove his guilt beyond a reasonable doubt as well as answering "yes" to the inquiry.  Finally, he testified that he did not dispute what was in the transcript.  He simply did not remember it.  (App. pp. 52-54).

Trial counsel, Mr. Gamble, testified that it was in Petitioner's best interest to plead guilty.  Petitioner had given a statement to police that Mr. Gamble testified was "[d]efinitely

incriminating."  Mr. Gamble did not have an independent recollection of discussing

Petitioner's right to suppress the statement with Petitioner.  However, he followed his routine

practice, and he ascertained that law enforcement had advised Petitioner of the *Miranda*

rights.  He also determined that there was not a question as to the propriety of the waiver and

that a suppression motion would have been unsuccessful.  When asked whether he had

reviewed the State's evidence with his client, Mr. Gamble testified that he had attended a

preliminary hearing in the case and Petitioner was present.  At that hearing, "Officer

Zamberlin testified as to the facts that basically went along with [Petitioner's] statement and

they tied together."  (App. pp. 56-57; 60-61).

      Trial counsel specifically denied that he had coerced Petitioner into entering the guilty

plea and he testified that Petitioner had initiated a request for a guilty plea.  Mr. Gamble met

with Petitioner on several occasions before the plea and he had reviewed the State's evidence

with Petitioner.  Petitioner admitted "from the very get-go" that he had committed the crimes

with which he was charged, expect for the two CSC charges.  (App. 59)  Petitioner continued

to admit responsibility for most of the charges in their subsequent discussions and he did not

ask about a trial, except for the charge of criminal sexual conduct.  Mr. Gamble discussed the

facts of the case with Petitioner and felt that Petitioner had understood their discussion.

Petitioner also wrote a letter to Mr. Gamble stating that he wanted to plead guilty, "but he

wanted probation or he would take castration."  Initially, the State indicated that "they would

be satisfied with fifty years."  Mr. Gamble eventually got the State down to thirty years, "and

that was as low as they would go."  (App. 57-60).

      When asked whether he had ever refused to take Petitioner's case to trial, Mr. Gamble

and Mr. Grigg, who cross-examined Mr. Gamble, engaged in the following colloquy:

> Mr. Gamble:    I get paid whether I go to trial or whether it's a plea.  It's no personal
> thing to me.  I'll go to trial even if it's a hopeless case, which this one
> would have been.

| | |
|---|---|
| Mr. Grigg: | This one would have been? |
| Mr. Gamble: | It's hopeless. |
| Mr. Grigg: | In your opinion her would have been found guilty had he gone to trial? |
| Mr. Gamble: | Oh, he would have been found guilty of a lot of things if he'd went [sic] to trial. I was familiar with the victim in this supposed rape or CSC. . . . I know the family.  I don't know her personally.  But it would have been a massacre. |

(App. 61-62)

Mr. Gamble testified as to the facts that his investigation revealed.  The State had evidence such as a gun and a picture of Petitioner and victim at an ATM at TJ Maxx.  The facts suggested that Petitioner had forced the victim into her car in the parking lot at TJ Maxx, and forced her to withdraw $ 200.00 from an ATM.  They next went behind a liquor store on Clemson Blvd. and into some woods.  Petitioner allegedly had already digitally penetrated the victim that point.  He left her in the woods and then drove off in her green 1993 Lexus.

Mr. Gamble stated that there were two other occasions where Petitioner went to an ATM.  Mr. Gamble viewed the photographs of those at the police department and the photographs depicted Petitioner.  Mr. Gamble believed the evidence was very incriminating for Petitioner.  Mr. Gamble did not think that Petitioner would prevail at a jury trial and he told Petitioner this.  (App. 57-59).

The PCR judge found that Petitioner's testimony was not credible as to his claims of ineffective assistance and that he did not meet his burden of proof.  The PCR judge therefore denied relief.  (App. p. 72.)

Based upon this record, the court finds that the PCR judge's denial of relief on this allegation was not "contrary to" and did not involve "an unreasonable application of" *Strickland, Hill* or any other clearly established United States Supreme Court precedent.  28 U.S.C. § 2254(d)(1); *Williams, supra*.

Initially Respondent submits that he did not give any reason for the PCR court to ignore his sworn responses at his guilty plea that he knew what he was doing was wrong when he did it; that he believed he would most probably be found guilty if he received a jury trial; that he understood the negotiated sentence; that he wanted the trial court to agree to the negotiated sentence; that no one had threatened him or used force to cause him to enter the plea; that he was pleading guilty of his "own free will and accord;" that he had received enough time to decide whether or not to plead guilty; that he had "fully discussed all aspects of this case with [trial] counsel;" that he did not need any additional time to speak with counsel; that he was completely satisfied with counsel's services; that he had fully understood the trial court's questions; and that he did not need to ask the trial court anything.  (App. pp. 10-14).  *Blackledge*, 431 U.S. at 73-74 (Although the defendant's representations at the time of his guilty plea are not "invariably insurmountable" when challenging the voluntariness of his plea, the Court stated that, nonetheless, the defendant's representations, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier . . . .  Solemn declarations in open court carry a strong presumption of verity."  The Court also concluded that a subsequent presentation of conclusory allegations and contentions that are wholly incredible in the face of the record are subject to summary dismissal); *Crawford, supra*.  Moreover, in light of the record of the guilty plea and trial counsel's testimony, it was not objectively unreasonable for the PCR judge to find that Petitioner's PCR testimony was not credible and that he did not meet his burden of proof.

Indeed, the record from the plea and trial counsel's testimony support a conclusion that there was not any coercion.  To the contrary, Petitioner freely admitted his guilt on all of the charges except CSC and that he voluntarily wanted to plead guilty to those other charges.  Further, counsel investigated the case and discussed the State's evidence with his client.  Counsel's objective investigation led him to the conclusion that "it would have been a massacre" to go through with a jury trial.  Petitioner agreed and freely and voluntarily pled

guilty. Finally, no coercion arose either from Petitioner's decision to accept a negotiated sentence of thirty years' imprisonment, rather than chance a fifty year sentence if he went to trial, or counsel's advice that this was a good decision. *See North Carolina v. Alford*, 400 U.S.25 (1970) (the trial court did not commit constitutional error in accepting guilty plea despite defendant's claim of innocence, where there was strong evidence of actual guilt substantially negating defendant's claim of innocence and providing strong factual basis for the guilty plea, and state had a strong case of first-degree murder, so that defendant, advised by competent counsel, intelligently concluded that he should plead guilty to second-degree murder rather than be tried for first-degree murder).

## RECOMMENDATION

For the foregoing reasons, it is recommended that Petitioner's Petition **[1] be dismissed**, and that Respondents' motion for summary judgment **[12] be granted.**


GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

March 18, 2008

Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).